**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON**

**CIVIL ACTION NO. 26-117-DLB**

RAFAEL ARMANDO PENOTT RODRIGUEZ                          PETITIONER

v.                                              **ORDER**

MARC FIELDS, et al.,                                      RESPONDENTS

\* \* \* \* \* \* \* \* \* \*

## I.    INTRODUCTION

This matter is before the Court on Petitioner Penott Rodriguez's Second Motion to Enforce Judgment (Doc. # 11).  For the following reasons, the Court will **deny** the Motion.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Rafael Armando Penott Rodriguez is a native and citizen of Venezuela. (Doc. # 1 ¶ 19).  He entered the United States near Eagle Pass, Texas on October 6, 2023.  (*Id*. ¶ 21).  On November 7, 2023, Petitioner was paroled into the United States for a term of one year.  (Doc. # 1-5).  On February 17, 2026, Petitioner was served with an I-200 Warrant for Arrest of Alien and was immediately detained without access to a bond hearing.  (Doc. # 1 ¶ 33).

On March 16, 2026, Penott Rodriguez filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. # 1).  On April 21, 2026, this Court issued a Memorandum Opinion and Order directing Respondents to immediately release Petitioner, or in the alternative, provide him with a constitutionally adequate bond hearing. (Doc. # 9 at 7).  On May 1, 2026, Petitioner filed his first Motion to Enforce Judgment

1

wherein he requested the Court enforce its previous Order granting his Petition because the IJ who held his bond hearing refused to allocate the burden of proof to the government during the hearing.  (Doc. # 8 at 2).  On May 5, 2026, this Court granted Petitioner's First Motion to Enforce, ordering a constitutionally adequate bond hearing where the government bears the burden of proof by clear and convincing evidence.  (Doc. # 9 at 7).

On May 15, 2026, Petitioner filed the pending Motion to Enforce Judgment arguing that his second bond hearing "did not comply with due process and lacked fundamental fairness."  (Doc. # 11 at 6).  On May 19, 2026, Respondents filed a status report acknowledging Petitioner's Second Motion to Enforce and submitting a copy of the Immigration Judge's second order denying bond.  (Doc. # 12).

## III.   ANALYSIS

In his Second Motion to Enforce, Petitioner argues that his second bond hearing "did not comply with due process and lacked fundamental fairness."  (Doc. # 11 at 6). Specifically, he argues that "he was not provided a constitutionally adequate bond hearing at which the government bears the burden of proof by clear and convincing evidence[.]" (*Id*. at 8).  Additionally, he argues the second bond hearing lacked fundamental fairness because IJ Johnson has "abandoned his role as a neutral fact-finder[.]"  (*Id*. at 9).  The Court will address each argument in turn.

### A.  Constitutionally adequate bond hearing

Petitioner first argues that the IJ's decision to deny bond was an abuse of discretion.  (*Id*. at 6).  He asserts that he is "not asking the Court to consider whether the IJ came to the wrong conclusion after review the evidence" but rather, that he was "not provided a constitutionally adequate bond hearing . . . because the IJ based his decision largely on arguments not advanced by the government and on evidence never admitted

2

into the record." (*Id*. at 8). Specifically, Petitioner takes issue with the fact that "[a] significant portion of IJ Johnson's decision focused on issues not raised by the government at the hearing, namely the political and social situation in Venezuela." (*Id*.). Petitioner argues that "[i]t is not constitutionally adequate for the IJ to base his decision on evidence never admitted into the record and arguments not advanced by the government." (*Id*.).

The Court has reviewed the transcript of Petitioner's bond hearing, as well as the order from the IJ in its entirety. (*See* Docs. # 11-2 and 11-3). Petitioner is correct in stating that a significant portion of the IJ's decision focused on the political and social climate in Venezuela. [1] (Doc. # 11-3 at 4). However, that is not the only reason the IJ denied bond. Indeed, the IJ also found that Petitioner's sponsor was insufficient to ensure his appearance and that his short time in the United States weighed against his release. (*Id*.). Additionally, the IJ acknowledged that Petitioner's fear-based application was speculative, that he has no family with him in the United States, that he only had period employment, and that he obtained food assistance from a church. (*Id*. at 3-4). Counsel for Respondents mentioned most, if not all, of these in their closing argument. (*See* Doc. # 11-2 at 16:19-21) ("[Petitioner] has only been in the United States since October of 2023. This is a relatively short period of time. Second, the [Petitioner] does not have any significant family ties . . . . [Petitioner] was not doing anything on a permanent basis and [] he was receiving assistance from a church."); (*Id*. at 37-40; 17:1-2) ("[R]elief is

---

[1]    Petitioner is also correct that the IJ "recycle[d] much of his prior bond denial." (Doc. # 11 at 8). Specifically, the portion of the IJ's second order which discusses the political and social situation of Venezuela is nearly identical to his first order. (*Compare* Doc. # 11-3 at 3-4, *with* Doc. # 11-4 at 3-4). However, as will be discussed, the current state of Venezuela is not the only basis for the IJ's bond denial. As such, the IJ's recycling of language alone is not enough to warrant a third bond hearing.

speculative . . . . You combine all of these factors of the family ties, the missed immigration proceeding, the short period of time in the United States, all of it amounts to the fact that the [Petitioner] should be deemed a flight risk[.]").  Additionally, much of this information was elicited during the government's case-in-chief where it called Petitioner as a witness. (*See* Doc. # 11-2 at 6-7).

The Court agrees with Petitioner that an IJ holding that the government properly carried the burden of proof after basing that decision on evidence that was not presented, argued, or elicited by the government at all would warrant serious scrutiny over whether the burden of proof was actually met.  However, in this case, the current social and political landscape of Venezuela is not the only reason the IJ decided to deny bond.  Rather, the IJ found that Petitioner's insufficient sponsor and short time in the United States was also grounds to deny bond, and therefore held that the government carried its burden of proof. [2]  (*See generally* Doc. # 11-3).

Accordingly, because the IJ denied bond on multiple grounds, and that information was presented by the government during its case-in-chief and its closing argument, this Court lacks jurisdiction pursuant to 8 U.S.C. § 1226(e) to review the discretionary decision to deny bond.  *See Nielsen v. Preap*, 586 U.S. 392, 401 (2019) (noting that § 1226(e)

---

[2]     Petitioner takes issue with the single document the government admitted into evidence which was a copy of an old in-absentia removal order that was entered in error by a prior immigration judge.  (Doc. # 11 at 3).  While the government did submit it as evidence, and touch on it in its closing argument, nothing in the IJ's order shows that he relied on that order.  Indeed, the IJ actually acknowledged that "[Petitioner] testified in summary that he has never failed to appear for any immigration proceedings." (Doc. # 11-3 at 4).  Had the government or the IJ relied on this evidence alone, Petitioner may have more of an argument.  However, this was not the only piece of evidence that the IJ relied on in making his decision, nor was it the only evidence presented by the government, given that the government called the Petitioner to testify as a witness.  In fact, this is acknowledged by the IJ when he concluded that the government "met its burden through *elicited testimony*." (*Id*. at 5) (emphasis added).

bars review of discretionary applications of § 1226); *Hernandez-Gabriel v. Tate*, No. 25-cv-5687-H, 2026 WL 161192, at *4 (S.D. Tx. Jan. 20, 2026) (holding that a district court lacked jurisdiction to consider a petitioner's challenge to the correctness of an IJ's determination that the petitioner posed a flight risk); *Perez Sierra v. Bondi*, No. 25-cv-18829, 2026 WL 497070, at *3 (D.N.J. Feb. 23, 2026) ("This Court lacks jurisdiction to review any discretionary determinations underlying an immigration judge's bond decision, but it can review whether the bond hearing was fundamentally unfair in violation of this Court's order."); *cf. Soto-Medina v. Lynch*, No. 1:25-cv-1704, 2026 WL 161002, at *2 (W.D. Mich. Jan. 21, 2026) (holding that § 1226(e) did not bar consideration of a petitioner's challenge that the discretionary process of § 1226(a) itself is unconstitutional).

### B. IJ Johnson was a neutral decisionmaker

Petitioner next argues that an enforcement order is appropriate because "IJ Johnson failed to act as a neutral adjudicator as due process requires." (Doc. # 11 at 8). His claim stems from two sources. First, he points to IJ Johnson's 97.52% bond denial rate as "the highest in the country" among IJs. (*Id*. at 9). This track record, he argues, demonstrates "IJ Johnson's lack of meaningful, neutral assessment[s]" and that Petitioner's bond denial "is part of a larger pattern." (*Id*.). Next, he argues that the IJs face pressure to deny bond from senior executive branch officials. (*Id*. at 10). He contends that the "IJs are highly susceptible to pressure from Respondent Acting Attorney General . . . . [thus] IJs now operate under a fear that if they grant bond, they may be fired." (*Id*.). He holds that this "erosion of judicial independence in immigration courts" is grounds for his immediate release. (*Id*. at 11).

5

Based on the record, Petitioner has failed to establish that IJ Johnson was not a neutral decisionmaker.  The mere fact that IJ Johnson has a high bond-denial rate cannot establish that he lacks neutrality.  Even accepting that he denies bond at a higher rate than most IJs, the Court is unable to conclude that these denials resulted from a bias against petitioners, rather than the facts at play in each case.  And IJ Johnson evidently considered these facts in reaching his conclusion.  (*See* Doc. # 11-3 at 2) ("The Court is completely familiar with the record. . . . The Court listened intently to the testimonial evidence. The Court has fully reviewed and considered the documents contained in the record[.]").  Finally, the Court disagrees that administrative pressures within the Department of Justice have vitiated IJs' ability to adjudicate bond determination hearings in a neutral manner.

## IV.    CONCLUSION

Accordingly, for the reasons stated herein,

**IT IS SO ORDERED** as follows:

(1)  Petitioner's Second Motion to Enforce Judgment (Doc. # 11) is **DENIED**; and

(2)  This matter is hereby **DISMISSED** and **STRICKEN** from the Court's active docket.

This 2nd day of June, 2026.



Signed By:

David L. Bunning

Chief United States District Judge

6